COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1241**

Cir. Ct. No. **2024CV247**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

D. EVAN FLOWER,

   PLAINTIFF-APPELLANT,

 V.

RICHARD MOEGENBERG,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. D. Evan Flower appeals an order of the circuit court granting summary judgment to Richard Moegenberg, dismissing Flower's

claim for money damages against Moegenberg. Flower's claim is based on a $60,000 debt that Moegenberg failed to pay to Flower when it came due, or at any pertinent time after that. The court determined that Flower's claim is barred by the six-year statute of limitations for contract claims. *See* WIS. STAT. § 893.43(1) (2023-24) ("an action upon any contract, obligation, or liability, express or implied … shall be commenced within 6 years after the cause of action accrues or be barred").[1] Flower argues that the court erred in concluding that the statute of limitations period was not restarted each time Moegenberg made what Flower characterizes as new, unqualified promises to pay Flower. Flower also contends that the court erred in concluding that Moegenberg was not equitably estopped from asserting the statute of limitations defense. We reject Flower's arguments and affirm.[2]

## BACKGROUND

¶2 In June 2024, Flower commenced this action against Moegenberg to recover money that Moegenberg had promised to pay to Flower. Moegenberg moved for summary judgment, arguing that Flower's claim was barred by the six-year statute of limitations set forth in WIS. STAT. § 893.43(1). There is no dispute that Flower commenced this action more than six years after February 2018, which is when Moegenberg first failed to pay Flower as promised. At the same

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] We call to the attention of Flower's counsel the fact that an appellate brief filed with this court "must have page numbers centered in the bottom margin … with sequential numbering starting at '1' on the cover" of the brief. WIS. STAT. RULE 809.19(8)(bm). That approach assists this court because the brief's pagination "match[es] … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers." *See* RULE 809.19, cmt., 2021.

time, there is also no dispute that, if the communications by Moegenberg that Flowers highlights had the effect of restarting the statute of limitations period, then the suit was timely filed in June 2024. The following undisputed facts are relevant to Flower's claim and Moegenberg's summary judgment motion that the circuit court granted.

¶3      On January 10, 2018, Flower gave $15,000 to Moegenberg based on Moegenberg's promise that Moegenberg would "invest[]" that money, gain a "return" of at least $30,000, and then pay Flower $30,000 within two weeks. On January 24, 2018, Flower gave another $15,000 to Moegenberg, based on the same terms, with the result that Moegenberg promised to pay Flower a total of $60,000 within two weeks after January 24. Moegenberg never paid Flower any of the promised $60,000, leaving Flower out $30,000 and his promised "return" of $30,000 more.

¶4      On October 3, 2018, Moegenberg sent a text to Flower, stating the following. Moegenberg would talk to his wife in order to "see what we can get set up for making some payments to you to try and get you that money back as well as your interest." In a response text, Flower stated that he "[r]eally appreciate[d]" Moegenberg "getting back to" Flower, and Flower closed by stating, "[t]alk to you soon."

¶5      On January 18, 2019, Moegenberg sent a text to Flower stating the following. Moegenberg's wife had "control of all things financial with the business." It is not clear from the text itself, or even the larger record in this appeal, what connection, if any, "the business" was supposed to have had to Moegenberg's purported "investment" of Flower's money. In any event, the 2019 text conveyed that Moegenberg's wife knew about the payments Flower had made

3

to Moegenberg and about Moegenberg's promise to return double the "investments." Moegenberg's wife did not want "to pull $60,000 from the company's funds" at that time, because that would result in the business "clos[ing its] doors." Instead, Moegenberg represented that he and his wife were "in the process of selling" a "rental propert[y]" that the Moegenbergs apparently owned in order to pay Flower "in full." The text concluded by stating that Moegenberg "appreciate[d] [Flower's] patience to this point" and that "we will get it worked out." The record does not reflect an immediate response by Flower to this text.

¶6 Moving ahead more than one year, on May 27, 2020, in response to an email from Flower proposing a payment plan for the Moegenbergs to give him $60,000, beginning with a payment of $10,000, Moegenberg emailed Flower. In this responsive email, Moegenberg stated in pertinent part: "I borrowed $30,000 from you and promised to pay you $60,000 back[,] and that is what I intend to do."

¶7 Moegenberg's summary judgment motion was based on the fact that more than six years had passed between the accrual of the claim on the debt in February 2018 and the filing of this lawsuit in June 2024. Flower opposed summary judgment on two alternative grounds. First, he argued that, through his communications to Flower in the 2019 text and the 2020 email, Moegenberg had effectively made renewed promises to Flower that he would pay him $60,000, and therefore each communication had caused the statute of limitations period to be

4

restarted or reset.[3]  Second, in the alternative, Flower argued that Moegenberg is equitably estopped from asserting the statute of limitations as a defense.[4]

¶8      The circuit court rejected Flower's arguments and granted summary judgment dismissing his claim based on the statute of limitations.  The court concluded that, under pertinent case law, neither the 2019 text nor the 2020 email caused the statute of limitations period to be restarted.  The court further concluded that Moegenberg is not equitably estopped from asserting a statute of limitations defense.  Equitable estoppel was not shown in the court's view because Flower failed to provide sufficient evidence showing that he actually relied on the

---

[3] In the circuit court, Flower did not refer to the October 2018 text in opposing summary judgment, and he also does not refer to it on appeal.  Further, on our de novo review, we interpret the October 2018 text as merely providing limited context for consideration of the 2019 text and the 2020 email, and we conclude that it does not in itself support any argument that Flower makes on appeal on either of the two issues that we address.

On a related note, we observe that while several text exchanges submitted in the summary judgment materials show brief messages from Flower to Moegenberg that are not fully summarized in this opinion, neither party argues that any of them are pertinent to any issue raised on appeal.  Further, on our de novo review, we do not discern any aspect of Flower's communications that undermine Moegenberg's entitlement to summary judgment based on the statute of limitations.

Regarding Moegenberg's 2020 email specifically, there is evidence that the email came at a time when Moegenberg attempted to assure Flower that Moegenberg's debt to Flower would not hurt or involve Flower's employer, with whom Moegenberg apparently had separate business dealings.  But the topic of Flower's employer does not figure into our analysis, because Flower does not refer to the topic in his opening brief on appeal, and he makes only unclear references to it in his reply brief.

[4] In the circuit court, Flower also advanced a third ground to deny summary judgment on the basis of the statute of limitations, arguing that Moegenberg had made a partial payment toward the debt that tolled the statute of limitations.  This was based on Flower's averment that Moegenberg gave him a set of Apple AirPods in 2021, with the goal of keeping Flower "from taking adverse action against [Moegenberg] to recover [Flower's] investment."  The circuit court rejected this argument, and Flower does not renew it on appeal.  The standalone tolling argument is accordingly abandoned, *see A.O. Smith Corp. v. Allstate Insurance Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998), although we take the underlying factual allegations into account below in connection with the equitable estoppel issue.

2019 text or the 2020 email, or that Flower reasonably delayed his pursuit of this litigation following those communications.

¶9     Flower appeals.

## DISCUSSION

¶10     On appeal, Flower renews his arguments against summary judgment described above.

¶11     We review a grant of summary judgment de novo. *Kornreich v. Town of Cedarburg*, 2023 WI App 46, ¶7, 409 Wis. 2d 118, 996 N.W.2d 72 (citing *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We view the summary judgment materials "'in the light most favorable to the nonmoving party,'" here, Flower. *See Kornreich*, 409 Wis. 2d 118, ¶7 (quoting *AccuWeb, Inc. v. Foley & Lardner*, 2008 WI 24, ¶21, 308 Wis. 2d 258, 746 N.W.2d 447).

## I.  Alleged Restarting of the Statute of Limitations by Promises to Pay

¶12     Flower argues that Moegenberg's 2019 text and 2020 email both qualify as new, unqualified promises to pay, in each case restarting the six-year statute of limitations period. After addressing pertinent legal standards, we analyze each of these communications in turn, explaining why we conclude that neither restarted the statute of limitations that was initially commenced in February 2018, when Moegenberg was first obligated to pay Flower under their agreement.

¶13     "'[W]hen the statute of limitations has run against a debt in favor of" the debtor, any claim based on the debt is barred. ***Kurt Van Engel Comm'n Co. v. Zingale***, 2005 WI App 82, ¶12, 280 Wis. 2d 777, 696 N.W.2d 280 (quoting ***Pierce v. Seymour***, 52 Wis. 272, 276, 9 N.W. 71 (1881)).  The starting date of a statute of limitations period does not change merely because the debtor acknowledges the existence and unpaid nature of a debt.  *See id.*, ¶¶11-12.  More is required.  Specifically, "'in order to take a case out of the statute of limitations on the ground of a new promise, there must [not only be] an admission of a debt or obligation, [but also] an unqualified promise to pay the debt'" made within the statute of limitations.  *See id.*, ¶12 (quoting ***Pierce***, 52 Wis. at 277).[5]  Put differently, only a "new and unqualified promise" to pay a debt can cause the statute of limitations period to be restarted.  *See id.*, ¶¶2, 13-14.

¶14     Turning first to the 2019 text, as noted above, it contained Moegenberg's acknowledgment that he had a "deal" with Flower under which Flower "[had] to be paid back," which he conveyed was understood by Moegenberg's wife as well.  This reference to the obligation was perhaps not perfectly literal, in that there is no dispute that the obligation was not merely to pay Flower back $30,000, but instead to pay Flower double this amount.  It remains, however, that Moegenberg was unambiguously referencing the "deal" the

---

[5] We do not need to reach an alternative ground that Moegenberg argues to support summary judgment in his favor, namely, that the new promise must be signed by the debtor. Explaining further, in order for a new, unqualified promise to repay an existing debt to "'remove the bar of the statute'" of limitations—that is, restart the running of the six-year running period—the promise must be signed by the party making it. ***Kurt Van Engel Comm'n Co. v. Zingale***, 2005 WI App 82, ¶12, 280 Wis. 2d 777, 696 N.W.2d 280 (quoting ***Pierce v. Seymour***, 52 Wis. 272, 276, 9 N.W. 71 (1881)). Moegenberg argues that his 2019 text message was unsigned for purposes of applying ***Kurt Van Engel*** here, even though there appears to be no dispute that he authored and sent the text. We do not reach this issue, because we conclude that, whether it is considered to be "signed" or not, the 2019 text was not a new, unqualified promise to pay.

parties struck in January 2018. Thus, this aspect of the 2019 text was merely an acknowledgement of the existing obligation, which could not affect the statute of limitations period. *See id.*, ¶12.

¶15 Further, other aspects of the 2019 text show that it contained only "'a promise subject to many contingencies and conditions,'" which is not an unqualified promise to pay, at least when the advocate for a restarted limitations period cannot show that it was "proved … before the action was brought" that the contingencies and conditions were met. *See id.* (quoting *Pierce*, 279 Wis. at 279-80). The text states that Moegenberg's wife, not Moegenberg, was in charge of finances for "the business." This implied at least a connection between the availability of income or assets of "the business" and a basis for Moegenberg to pay Flower soon after the 2019 text. But this was qualified by Moegenberg's further statement that "pull[ing] $60,000 from" the business's funds would not be feasible. Moegenberg also represented that he and his wife were "in the process of selling" a rental property in order to pay Flower "in full." In sum, the text's promise to pay was contingent, at a minimum, on the continued support from Moegenberg's wife to pay Flower the allegedly promised $60,000 and the ability to secure that amount for this purpose at some point in the future.

¶16 Regarding the reference in the 2019 text to a "process of selling" a rental property, Flower points out that Moegenberg could have used more contingent language than he did, such as by saying that he was merely "planning" to sell a property, or "considering" such a sale. But it remains that referring to a "process" of a sale is not the same as stating that there has been a completed sale sufficient to pay Flower in full, or even the same as clarifying that a completed sale was imminent that would allow Flower to be paid $60,000. For all Flower knew, based on Moegenberg's text, the next step of the "process" would be merely

to engage with a broker of some sort to put a building on the market, which could be a relatively early step among numerous steps toward actually obtaining at least $60,000 in proceeds. At least based on this particular communication, Flower could have hoped that the number of steps would be small and the certainty of success great, but this was not an unqualified promise to pay.

¶17    Flower points out that the supreme court in *Pierce* arguably left open the following question. Can "a conditional promise to pay" be sufficient to restart the running of the statute of limitations when there is proof "before the action was brought" that the condition has been met? *See Pierce*, 52 Wis. at 279-80. But, it does not matter how this question might be resolved, because Flower fails to identify any evidence in the summary judgment materials indicating that the contingencies evident in the 2019 text were resolved at any pertinent time. That is to say, there is no evidence that any particular "rental propert[y]" had in fact been sold and that such a sale had netted sufficient funds to pay Flower in full. Flower contends that it was unreasonable for Moegenberg to plead in his answer to the complaint that Moegenberg was not aware whether the property referred to in the 2019 text had ever been sold. Flower apparently means to suggest that the only reason there is no evidence in the record regarding whether the contingency of the potential sale of a "rental propert[y]" was not fulfilled is that Moegenberg disingenuously claimed ignorance in his answer as to whether the property was in fact sold. However, Flower does not explain why he was unable to seek, through ordinary discovery, additional evidence regarding the potential sale of any "rental propert[y]" or, more broadly, why under summary judgment standards and the reasoning in *Pierce* this alleged gap in the factual record regarding such a potential sale prevents the application of the statute of limitations to bar the claim.

¶18     Turning to the 2020 email, to repeat, it contained the following statement by Moegenberg: "I borrowed $30,000 from you and promised to pay you $60,000 back[,] and that is what I intend to do."  The first part of this sentence is an acknowledgment of the existing obligation, describing what was "borrowed" and what Moegenberg promised to pay Flowers.  This does not affect the statute of limitations period.  *See **Kurt Van Engel***, 280 Wis. 2d 777, ¶¶11-12.  We now explain why the second part of the sentence ("that is what I intend to do") does not constitute, in the words of ***Kurt Van Engel***, a "new and unqualified promise" to the pay the existing obligation.  *See **id.***, ¶¶14-28 (analyzing paragraph by paragraph whether "[p]ledge [a]greement" contained "new and unqualified promise to pay" debt owed under a note).

¶19     To intend to do something means "to have in mind as a purpose or goal."  *Intend*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/intend (last visited, July 8, 2026).  Expressing to someone a purpose or goal to pay the person is not an unqualified promise that the person will be paid.  As the circuit court reasoned in its analysis, such an expression of an intent to pay becomes an unqualified promise to pay only when it includes, at a minimum, details such as the timing and nature of the intended payment.  As the court put it, without such additional details here, it was unclear if Moegenberg meant only that he intended to pay the debt "at some point in the future, when he is able."  *See **Kurt Van Engel***, 280 Wis. 2d 777, ¶¶11-12 (noting discussion in ***Pierce*** that statement from debtor meant to "'give … hope that at some time [the creditor] might expect to realize something on [the creditor's] long-standing claim'" fell short of being an unqualified promise to pay).

¶20     Flower cites to dictionary definitions of "promise" and to a proposition in the RESTATEMENT (SECOND) OF CONTRACTS to emphasize that

Moegenberg's statement that he continued to "intend" to pay Flower back constituted a promise. But this goes only part way to addressing the issue. The issue is not whether the 2019 text or the 2020 email, standing alone, could constitute promises. The issue is whether they had the effect of restarting the statute of limitations that commenced in February 2018, when the claim in this case accrued. Otherwise, the discussion in such precedent as *Kurt Van Engel* and *Pierce* would be quite different.

## II. Equitable Estoppel of Relying on Statute of Limitations

¶21 As an alternative argument, Flower contends that Moegenberg should be equitably estopped from asserting the statute of limitations as a defense. More specifically, Flower contends that the circuit court erred in applying summary judgment standards to determine that there is insufficient evidence to support the application of equitable estoppel. After addressing additional pertinent legal standards, we explain our conclusions that the summary judgment materials do not support applying equitable estoppel to Moegenberg's statute of limitations defense, and that Flower fails to develop a legally supported argument to the contrary.

¶22 A defendant is equitably estopped from asserting the statute of limitations as a defense when all of four conditions are met:

> (1) the defendant was guilty of fraudulent or inequitable conduct; (2) the aggrieved party relied on the defendant's acts or representations and, as a result, failed to commence an action within the statutory limitation period; (3) the defendant's acts, promises, or representations occurred before the expiration of the limitation period; and (4) after the inducement for delay ceased to operate, the aggrieved party did not unreasonably delay in filing suit.

11

*Wascher v. ABC Ins. Co.*, 2022 WI App 10, ¶43, 401 Wis. 2d 94, 972 N.W.2d 162; *see also Hocking v. City of Dodgeville*, 2009 WI App 108, ¶17, 320 Wis. 2d 519, 770 N.W.2d 761 (equitable estoppel "may be applied to prevent a party from asserting a defense of a statute of limitations when the conduct is so unfair and misleading as to outweigh the public interest in setting a limitation on bringing claims").

¶23 The proof required for equitable estoppel "'must be clear, satisfactory, and convincing[,] and must not rest on mere inference or conjecture.'" *See Wosinski v. Advance Cast Stone Co.*, 2017 WI App 51, ¶¶39-40, 377 Wis. 2d 596, 901 N.W.2d 797 (quoted source omitted). The party seeking to establish the elements of estoppel, here Flower, bears this burden of showing that each element is met. *See Yocherer v. Farmers Ins. Exch.*, 2002 WI 41, ¶25, 252 Wis. 2d 114, 643 N.W.2d 457. Whether a given set of facts—here, the summary judgment record when drawing all reasonable inferences in Flower's favor—meets the elements for equitable estoppel presents an issue of law that this court reviews de novo. *See Wosinski*, 377 Wis. 2d 596, ¶39.

¶24 Applying these standards here, we conclude that, at a minimum, Flower has failed to identify evidence in the summary judgment materials that, if credited by a finder of fact, could meet his burden of proof on the fourth element of equitable estoppel against Moegenberg's statute of limitations defense. That is, assuming without deciding that there is some evidence to support the first three conditions, Flower does not identify evidence showing that—whenever Moegenberg's "inducement[s] for delay" could have reasonably "ceased to operate"—there was any reason whatsoever for Flower to have waited to commence this action from after that point all the way until June 2024.

¶25    To recap, the "inducements for delay" that Flower posits are the 2019 text, and the 2020 email. And, although Flower does not specifically rely on this allegation, we further assume in his favor that Moegenberg's alleged gift of AirPods to Flower sometime in 2021 could have been a later inducement for delay. Flower avers that Moegenberg gave him the AirPods to induce Flower not to take "any adverse action against" Moegenberg. *See supra* note 3.

¶26    With that as the context, Flower fails to direct us to evidence in the summary judgment materials that could support a finding of reasonable delay for him in bringing suit following the last of these events, some point in 2021, until the time of filing in June 2024, in the context of the alleged debt at issue here and given the nature of the alleged inducements. Significantly, the analysis on this point is not whether the statute of limitations was reset; we explain above that Flower does not establish that it was. Instead, the issue here is whether, in asserting estoppel against Moegenberg's statute of limitations defense based on the continuously running statute of limitations, Flower could prove to a jury by clear and convincing evidence that his delay of approximately two to three years after the latest of Moegenberg's potential inducements was reasonable. Put differently, Flower fails to show that, after the effects of these alleged inducements would have naturally tapered off ("ceased to operate"), he had any reasonable basis whatsoever to delay in filing suit.

¶27    Flower argues that the circuit court, in addressing the issue of equitable estoppel, essentially made findings of fact on issues that should be left to the finder of fact at trial, not the court, on summary judgment. One problem with Flower's approach is that he does not cite any legal authority in support of any point regarding the estoppel issue until the reply brief. *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may disregard

arguments unsupported by references to legal authority); WIS. STAT. RULE 809.19(1)(e) (appellant's brief must include argument section that contains "the contention of the appellant, the reasons therefor, with citations to the authorities … relied on"). Beyond this, putting to the side the circuit court's analysis, our review is de novo for the reasons noted above, and Flower bears the burden to establish the elements of equitable estoppel by clear and convincing evidence. His narrow focus on the circuit court's reasoning leaves unaddressed how the summary judgment record could support his estoppel theory with respect to the need for at least some proof of reasonable delay. To the extent that Flower means to suggest that the particular alleged inducements here inherently or automatically could support a finding of reasonable delay, he fails to develop that as an argument.

## CONCLUSION

¶28 For all of these reasons, the order of the circuit court is affirmed.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.